# PUBLIC COPY—SEALED MATERIAL DELETED

ORAL ARGUMENT NOT YET SCHEDULED

REDACTED BRIEF FOR APPELLEE

———————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 24-5239

———————————

IN RE: APPLICATION OF THE UNITED STATES FOR AN
ORDER PURSUANT TO 18 U.S.C. § 2705(B)

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
GREGG A. MAISEL
\* ERIC HANSFORD
D.C. Bar #1017785
Assistant United States Attorneys

\* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Eric.Hansford@usdoj.gov
(202) 252-6829

No. 24-mc-58 (JEB)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties appearing before the district court and in this Court are intervenor-appellant, Empower Oversight Whistleblowers & Research, and appellee, the United States of America.

## Rulings Under Review

References to the ruling at issue appear in the brief for appellant.

## Related Cases

This case has not previously been before this Court. The primary legal issue in this appeal—whether Federal Rule of Criminal Procedure 6(e) applies to an application for a nondisclosure order under 18 U.S.C. § 2705(b)—is also presented in *In re Sealed Case*, No. 24-5089 (argued Nov. 12, 2024). This Court denied the government's motion to hold this appeal in abeyance pending the decision in *Sealed Case*.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

INTRODUCTION ......................................................................... 1

BACKGROUND ........................................................................... 1

    Legal Framework.................................................................2

    Procedural History ............................................................5

        Pleadings on Motion to Unseal ...................................6

        The District Court's Ruling .....................................12

SUMMARY OF ARGUMENT.....................................................14

ARGUMENT .............................................................................15

    The District Court Correctly Denied Further Disclosure of the
    NDO Application........................................................15

      A.   Applicable Legal Principles and Standard of Review ........15

      B.   The NDO Application Is Protected by Rule 6(e) Grand-
         Jury Secrecy. .........................................................18

      C.   The NDO Application Has Not Been Publicly
         Disclosed, So No Further Unsealing Is Warranted
         Here. ....................................................................30

      D.   If This Court Disagrees that Rule 6(e) Applies, It
         Should Remand.....................................................37

CONCLUSION ..........................................................................38

# TABLE OF AUTHORITIES*

## Cases

*Cable News Network, Inc. v. FBI*, 984 F.3d 114
(D.C. Cir. 2021) .................................................................. 18

*Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784
(D.C. Cir. 2019) .................................................................. 37

*Carpenter v. United States*, 585 U.S. 296 (2018)....................................... 3

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211
(1979) .............................................................. 15, 21, 28, 36

*In re Cheney*, No. 23-5071, 2024 WL 1739096
(D.C. Cir. Apr. 23, 2024) ........................................... 16, 19, 34

*In re Cisneros*, 426 F.3d 409 (D.C. Cir. 2005)......................................... 36

*In re Grand Jury Proceedings*, 851 F.2d 860 (6th Cir. 1988) ................. 21

*In re Grand Jury Subpoena*, 223 F.3d 213 (3d Cir. 2000) ...................... 32

*\*In re Grand Jury Subpoena, Judith Miller* (*Miller Subpoena*)*, 493 F.3d
152 (D.C. Cir. 2007) ...........................................16-17, 19, 25, 30-32, 36

*In re Leopold to Unseal Certain Elec. Surveillance Applications
& Ords.* (*Leopold I*), 300 F. Supp. 3d 61 (D.D.C. 2018)........................27

*In re Leopold to Unseal Certain Elec. Surveillance Applications  &
Ords.*, 964 F.3d 1121 (D.C. Cir. 2020)...........................12, 17, 24-27, 37

*In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292
(D.C. Cir. 2022) .................................................................. 37

*\*In re Motions of Dow Jones & Co.*, 142 F.3d 496
(D.C. Cir. 1999) ..................................... 12, 15-16, 18-20, 25, 30-31, 33

---

\*  Authorities upon which we chiefly rely are marked with asterisks.

iv

*In re New York Times Co.*, 657 F. Supp. 3d 136
(D.D.C. 2023), *vacated by Cheney*, 2024 WL 1739096.........................26

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) ..................................11, 16, 31

*In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999) ..............20

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ...................................17

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ...................................32

*In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989) ..................................34

*In re Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020) ......................4

*In re U.S. for an Ord. Pursuant to 18 U.S.C. Section
2703(D)*, 707 F.3d 283 (4th Cir. 2013)...........................................17, 38

*Labow v. DOJ*, 831 F.3d 523 (D.C. Cir. 2016) ........................................28

*Lopez v. DOJ*, 393 F.3d 1345 (D.C. Cir. 2005) ................................19, 21

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019)
.................................................................................15-16, 18, 21, 28-30

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661
(D.C. Cir. 2017) ...................................................................................25

*Microsoft Corp. v. United States DOJ*, 233 F. Supp. 3d 887
(W.D. Wash. 2017) .................................................................................2

*United States v. Bell*, 708 F.3d 223 (D.C. Cir. 2013)..............................33

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ......................37

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ................28

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983)..................4, 28-29

v

**Statutes**

18 U.S.C. § 641 ...................................................................... 23

18 U.S.C. § 2701 ...................................................................... 2

18 U.S.C. § 2703 ...................................................................... 2

18 U.S.C. § 2703(a) .................................................................. 3

18 U.S.C. § 2703(b) ............................................................... 2, 5

18 U.S.C. § 2703(b)(1) .............................................................3-4

18 U.S.C. § 2703(b)(1)(B)(i) ....................................................... 3

18 U.S.C. § 2703(c) ................................................................... 2

18 U.S.C. § 2703(c)(2) ............................................................... 4

18 U.S.C. § 2703(c)(3) ............................................................... 3

18 U.S.C. § 2703(d) ...............................................2, 3, 17, 26-27, 38

18 U.S.C. § 2705(a) ................................................................... 3

18 U.S.C. § 2705(b) ............................................... 1, 4-6, 22, 27

18 U.S.C. § 2712 ...................................................................... 2

**Rules**

Fed. R. of Crim. P. 6(e) ................................. 11-12, 14-20, 22, 24-33, 35-37

Fed. R. of Crim. P. 6(e)(2) .......................................... 4, 15, 29

Fed. R. of Crim. P. 6(e)(3) .............................................. 16

Fed. R. of Crim. P 6(e)(6) ........................... 7-8, 12, 14-15, 18-19, 25-26, 28

## **Other Authorities**

Office of the Inspector General, DOJ, OIG Rep. No. 25-010, *A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media* (Dec. 2024), *available at* https://oig.justice.gov/sites/default/files/reports/25-010.pdf ............................................................. 33

## ISSUE PRESENTED

Whether the district court abused its discretion in determining that grand-jury secrecy rules protected the government's ex parte application for nondisclosure of a grand-jury subpoena from further unsealing.

## INTRODUCTION

This appeal is about a discrete, narrow dispute: additional unsealing of one five-page document. Specifically, appellant Empower Oversight Whistleblowers & Research seeks further unsealing of the government's ex parte application for an order preventing disclosure of a grand-jury subpoena. But the district court permissibly determined that it had unsealed as much of the application as it could, and the remaining redacted portions of the application are protected by grand-jury secrecy. The district court's order should be affirmed.

## BACKGROUND

In approaching this case, it is necessary to distinguish between the three types of legal documents that Empower alleges were used in this case. First, according to Empower, a grand-jury subpoena required an electronic service provider to produce certain information about email accounts and phone numbers controlled by various people, including Empower's founder. Second, the government applied ex parte for a nondisclosure order (NDO) under 18 U.S.C. § 2705(b), which would require the service provider not to disclose the existence of the grand-jury

subpoena for some period of time. Third, the court issued the nondisclosure order, granting the government's application. Empower believes that it already possesses the grand-jury subpoena and the nondisclosure order. In this appeal, Empower seeks an unredacted version of the second document: the government's ex parte NDO application.

## Legal Framework

The Stored Communications Act, 18 U.S.C. §§ 2701-2712, establishes procedures for law enforcement to obtain information from electronic service providers. As relevant here, § 2703 sets forth procedures that distinguish between the contents of communications, § 2703(b), and non-content information, § 2703(c). "Content includes items such as emails and documents, while non-content data includes things like email addresses and IP addresses." *Microsoft Corp. v. United States DOJ*, 233 F. Supp. 3d 887, 894 (W.D. Wash. 2017).

The government may obtain information under § 2703 through various procedural mechanisms, including a warrant, a court order under § 2703(d), a trial subpoena, or a grand-jury subpoena. But obtaining certain types of information requires specific procedures. For example, to

obtain the contents of communications when they have been stored by providers for less than 180 days, the government must use a warrant. 18 U.S.C. § 2703(a); *see also Carpenter v. United States*, 585 U.S. 296 (2018) (requiring search warrant, not § 2703(d) order, to obtain certain cell-site location information). The chosen procedural mechanism can also alter other requirements. For example, if the government uses a subpoena to obtain the contents of communications stored for more than 180 days, it must give prior notice to the subscriber or customer, 18 U.S.C. § 2703(b)(1)(B)(i), although notice in certain circumstances may be delayed, 18 U.S.C. §§ 2703(b)(1), 2705(a). By contrast, if (as here) the government uses a subpoena to obtain limited non-content information, it is not required to provide notice to the subscriber or customer. 18 U.S.C. § 2703(c)(3). However, in such cases, the service provider is required to produce only the subscriber's or customer's:

(A) name;

(B) address;

(C) local and long distance telephone connection records, or records of session times and durations;

(D) length of service (including start date) and types of service utilized;

(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

(F) means and source of payment for such service (including any credit card or bank account number)[.]

§ 2703(c)(2).

By default, the service provider who produces the information may notify the subscriber that their information has been subpoenaed. A service provider that supplies information pursuant to a grand-jury subpoena "is a grand jury witness and is not subject to the general secrecy obligation imposed by the Federal Rule of Criminal Procedure 6(e)(2)." *In re Subpoena 2018R00776*, 947 F.3d 148, 152 (3d Cir. 2020); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) (grand-jury secrecy rules generally are not imposed on witnesses). Section 2705(b), however, "authorizes courts to prohibit a service provider from notifying anyone of its receipt of legal process in appropriate circumstances." *In re Subpoena 2018R00776*, 947 F.3d at 152. It provides:

**Preclusion of notice to subject of governmental access.** A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom

4

a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—

> (1) endangering the life or physical safety of an individual;

> (2) flight from prosecution;

> (3) destruction of or tampering with evidence;

> (4) intimidation of potential witnesses; or

> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

§ 2705(b).

## Procedural History

On May 2, 2024, Empower moved to intervene for the purpose of requesting unsealing of NDO applications related to grand-jury subpoena number GJ2017091241939 (see Appendix (A) 002-050). The government opposed both intervention and unsealing, filing a public opposition (see A050-059) and an ex parte addendum (see Ex Parte Sealed Supplemental Appendix (SSA) 001-006). Empower replied (see A060-083). On August 23, 2024, the Honorable James E. Boasberg granted Empower's motion to intervene and granted in part and denied in part its motion to unseal (see A083-092). Pursuant to Judge Boasberg's order, the government

5

filed a redacted NDO application and redacted NDO application extension on the public docket (see A093-103). Empower noticed an appeal on October 21, 2024.[1]

### *Pleadings on Motion to Unseal*

Empower's unsealing motion explained that it had been founded by Jason Foster, who in 2017 was the Chief Investigative Counsel to the U.S. Senate Judiciary Committee (A010). Foster said that, in October 2023, he had received notice that the Department of Justice had served a grand-jury subpoena on Google in 2017 and obtained records associated with his Google email address and his two Google Voice telephone numbers (*id.*). He attached the purported grand-jury subpoena (number GJ2017091241939) to his motion (A045-047). He also attached a 2017 nondisclosure order—captioned *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2705(b)*, No. 17-mc-2272— directing Google under § 2705(b) to not disclose the existence of subpoena number GJ2017091241939 for one year (A036), as well as multiple orders extending that nondisclosure order (A037-43).

---

[1] The government is not challenging Empower's intervention, so we focus here only on the unsealing litigation.

Empower sought unsealing of any NDO applications by the government related to the subpoena (see A034). The unsealing motion alleged that the NDO application may have failed to disclose that the subpoena was for accounts associated with congressional staffers whose committees oversaw the Department of Justice and who might communicate with confidential whistleblowers, and it claimed that there were "ample reasons to doubt that DOJ had a legitimate predicate to exclusively target these Legislative Branch oversight attorneys' communications" (A011-14). The NDO application and extensions, Empower contended, were judicial records that should be unsealed under the common-law right of access, the First Amendment, and the court's discretionary disclosure authority (A021-33).

Without confirming any matters occurring before a grand jury, the government assumed for purposes of the unsealing motion that the documents that Empower had attached related to a valid grand-jury subpoena (A051 & n.1). The government's opposition explained, however, that a request for these grand-jury materials would be governed by Federal Rule of Criminal Procedure 6(e)(6), which provides that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings

# PUBLIC COPY—SEALED

must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury" (see A052-58). Indeed, the government explained, "[w]hile Empower seeks access to materials related to a grand jury subpoena, it steadfastly avoids citing or discussing any caselaw that addresses unsealing of grand jury material" (A053).

Under Rule 6(e)(6), no unsealing was justified (see A053-55). There was "no claim that any grand jury proceeding that gave rise to the subpoena . . . has been broadly and publicly disclosed by the government or witnesses who appeared before that grand jury" (A056). "Rather, the Motion here appears to be predicated on a desire to know more information about any such proceeding. In such circumstances, one cannot fairly say that 'the cat is out of the bag.'" (A056-57.) And "[a]s discussed in greater detail in an accompanying ex parte sealed addendum," "the grand jury materials that Empower seeks to unseal cannot be redacted in any meaningful way without revealing a matter occurring before the grand jury" (A057) (some capitalization omitted).

In the ex parte sealed addendum, the government explained that ▮

████████████████████████████████████████████████████████████

PUBLIC COPY—SEALED

PUBLIC COPY—SEALED

# PUBLIC COPY—SEALED



In reply, Empower doubled down on its argument that the common-law right of access, and not Rule 6(e), applied to the unsealing request (see A069-076). But if Rule 6(e) applied, it argued, the district court could still grant partial unsealing under Local Criminal Rule 6.1 "with appropriate redactions of protected information" (A076-079). To evaluate the viability of such redactions, Empower argued, the court should examine the disputed records in camera (A079).

## The District Court's Ruling

Judge Boasberg "ultimately deliver[ed] a partial victory to each side, concluding that Empower may intervene in this case but may obtain only limited unsealing of the applications" (A086).

Judge Boasberg agreed that Rule 6(e)(6) provided the relevant standard for unsealing:

> DOJ is correct that Rule 6(e)(6) is the proper standard under which to evaluate Empower's request to unseal grand-jury materials and that the Court need not concern itself with common law or constitutional rights of access. *See* [*In re the Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1130 (D.C. Cir. 2020)] (Rule 6(e) "expressly directs secrecy as the default position, and thus displaces the common-law right of access."); [*In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1999)] ("[T]here is no First Amendment right of access to grand jury proceedings."). (A087-088.)

Under that standard, Judge Boasberg concluded that limited unsealing was possible:

> After reviewing the applications submitted in camera under the Rule 6(e)(6) standard, the Court finds that most of the information that the Department proposes to keep under seal must stay that way and that releasing applications beyond the initial application to extend the NDO is unwarranted. It disagrees, however, that sealing is necessary to the extent that it covers a typical jurisdictional discussion and a setting out of the legal standards that govern NDOs. The Court also finds that the applications, redacted accordingly, still contain

enough material to render disclosure useful to Empower. (088-089.)

Using the district court's discretionary disclosure authority, including under Local Rule 6.1, Judge Boasberg ordered "unsealing of the applications to the extent" that it would not disclose a matter occurring before a grand jury (A089-091).

Judge Boasberg rejected the suggestion that the grand-jury investigation had already been broadly and publicly disclosed (A091). "The publicity concerning the grand-jury materials here is dramatically less than that in other cases where the [c]ourt has held that any expectation of secrecy no longer existed," so "the disclosure of the grand-jury proceedings in this case is not enough to hold that 'the cat is out of the bag'" (*id.*). Judge Boasberg thus ordered the government to "unseal the applications at issue in the manner proposed and file them on the public docket in 7 days unless they have filed an appeal in that time" (A084). The redacted NDO application (A093-097) and extension (A098-103) were accordingly made public (see Brief of Intervenor-Appellant (Br.) 12-13).

## SUMMARY OF ARGUMENT

Although Empower treats the issue as an afterthought, the key legal question on appeal is whether the NDO application is covered by Rule 6(e) grand-jury secrecy. If it is, then the common-law and First Amendment rights of access that Empower invokes do not apply, and instead unsealing is governed by the Rule 6(e) framework. Rule 6(e)(6) directly covers the NDO application, because it is "a [r]ecord[ ] . . . relating to grand-jury proceedings." Local Rule 6.1 protects the NDO application even more explicitly, capturing any "application filed in connection with a grand jury subpoena." Because the redacted portions of the NDO application naturally include discussion of "matters occurring before the grand jury," and the contents of the redacted portions are not widely known, they must remain under seal.

Empower's contrary arguments do not justify disclosure. The Stored Communications Act's rules about sealing are a compliment to Rule 6(e), not a replacement. A lack of indictment in the underlying investigation favors continued sealing, protecting the interests of those who were suspected but never charged. And alleged public interest in the case does not overcome Rule 6(e) secrecy.

14

## ARGUMENT

## The District Court Correctly Denied Further Disclosure of the NDO Application.

### A.    Applicable Legal Principles and Standard of Review

The Supreme Court "consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). "That secrecy safeguards vital interests in (1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019); *see also Douglas Oil*, 441 U.S. at 219.

The secrecy of grand jury proceedings "is today preserved through [Federal Rule of Criminal Procedure] 6(e)." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998). Rule 6(e)(2) prohibits certain persons from "disclos[ing] a matter occurring before the grand jury." And Rule 6(e)(6) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long

15

as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." *See also In re Grand Jury Subpoena, Judith Miller* (*Miller Subpoena*)*,* 493 F.3d 152, 154 (D.C. Cir. 2007).

Rule 6(e) "makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule and sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed." *McKeever*, 920 F.3d at 844 (cleaned up). In particular, "[c]ourts may unseal records containing matters occurring before a grand jury only if the matters have already been publicly disclosed, *In re North*, 16 F.3d 1234, 1244-45 (D.C. Cir. 1994), one of the Rule 6(e)(3) exceptions applies, *McKeever*, 920 F.3d at 844-845, or the records can be redacted to excise any secret information, *see In re Dow Jones*, 142 F.3d at 506." *In re Cheney*, No. 23-5071, 2024 WL 1739096, at *3 (D.C. Cir. Apr. 23, 2024) (unpublished).

Local Criminal Rule 6.1 "addresses motions and orders relating to proceedings ancillary to the grand jury" and "provid[es] a limited right of access with respect to grand jury ancillary proceedings in which continued secrecy is not necessary to prevent disclosure of matters before

16

the grand jury." *In re Sealed Case*, 199 F.3d 522, 524 (D.C. Cir. 2000).

Local Rule 6.1 specifies:

> A motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support of or in opposition to such a motion or application, and all orders entered by the Court in connection therewith, shall be filed under seal. . . . Papers, orders and transcripts of hearings subject to this Rule, or portions thereof, may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.

Rule 6(e) displaces alternative bases for accessing judicial records. "The right of public access derives from two independent sources: the First Amendment and the common law." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). But "there is no First Amendment right of access to grand jury proceedings, nor do First Amendment protections extend to ancillary materials dealing with grand jury matters." *Miller Subpoena,* 493 F.3d at 154 (quotation mark omitted). Similarly, Rule 6(e) "displaces the common-law right of access." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.* (*Leopold II*), 964 F.3d 1121, 1130 (D.C. Cir. 2020).

This Court "review[s] an unsealing order for abuse of discretion," which includes "review[ing] de novo whether the district court applied

the proper legal standard in exercising its discretion." *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 117 (D.C. Cir. 2021) (cleaned up); *see also McKeever*, 920 F.3d at 846 (district court's "discretion" to disclose Rule 6(e) material is limited to recognized exceptions).

## B.   The NDO Application Is Protected by Rule 6(e) Grand-Jury Secrecy.

The application for an order requiring nondisclosure of a grand-jury subpoena is protected by both Rule 6(e) and Local Rule 6.1. Just as in the district court, for purposes of our unsealing analysis, we assume (as Empower alleges) that the document that Empower seeks to have unsealed related to a valid grand-jury subpoena (see A051 & n.1). *Accord Dow Jones*, 142 F.3d at 498 ("a grand jury here began receiving evidence about Monica Lewinsky and President Clinton, and others, *or so appellants in this case tell us*") (emphasis added).[3]

An NDO application relating to a grand-jury subpoena squarely falls within the scope of Rule 6(e). Rule 6(e)(6) specifically applies to "[r]ecords, orders, and subpoenas *relating to* grand-jury proceedings."

---

[3] Following Empower's approach, we do not here separately discuss the extensions to the NDO application. The legal issues related to the application and the extensions appear to be identical.

18

(emphasis added). *See Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (Rule 6(e) protects "documents related to grand jury investigations"). That language covers the grand-jury subpoena itself. *See Lopez*, 393 F.3d at 1349; Fed. Crim. R. 6(e)(6) advisory committee's note (1983 amend.). It also covers the order not to disclose the grand-jury subpoena. *See Miller Subpoena*, 493 F.3d at 154 (Rule 6(e) protects "ancillary materials dealing with grand jury matters," including "Judge Tatel's concurring opinion"). And it covers the application for the order not to disclose the grand-jury subpoena. *See Dow Jones*, 142 F.3d at 500 (current Local Rule 6.1 "gives [a party seeking unsealing] the most it could expect" under Rule 6(e) by providing for unsealing of "motions, applications, and orders 'filed in connection with a grand jury subpoena or other matter occurring before a grand jury'"); *see also, e.g.*, *In re Cheney*, 2024 WL 1739096, at *1-3 (Rule 6(e)(6) requires sealing of "any documents pertaining to a privilege invocation before a grand jury," including pleadings). Indeed, Rule 6(e)(6) was added in part to avoid public filing of grand-jury subpoenas and government applications that "commonly" revealed witnesses, potential targets, and the nature of the investigation. *See* Fed. Crim. R. 6(e)(6) advisory committee's note (1983 amend.).

Were there any doubt that Rule 6(e) covers an NDO application relating to a grand-jury subpoena, Local Rule 6.1 eliminates it. Local Rule 6.1 specifically protects an "application filed in connection with a grand jury subpoena." *See also Dow Jones*, 142 F.3d at 500 (approving scope of predecessor local rule). Notably, Empower's brief "do[es] not even mention" Local Rule 6.1, forfeiting any challenge to its scope. *See id.* at 501.

Rule 6(e) and Local Rule 6.1 thus require continued sealing of the NDO application here to the extent that further unsealing would disclose "a matter occurring before a grand jury." Matters occurring before the grand jury include "not only what has occurred and what is occurring, but also what is likely to occur." *Dow Jones*, 142 F.3d at 499-500. That encompasses "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Id.* (cleaned up). Similarly, "it would ordinarily be a violation of Rule 6(e) to disclose that a grand jury is investigating a particular person." *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1004 (D.C. Cir. 1999). Rule 6(e) protects even subtle hints about a grand jury's investigation. Grand-jury

subpoenas are protected, for example, because "the subpoenas and the dates on which they are issued tend to reveal the direction of the relevant investigation." *Lopez*, 393 F.3d at 1350. "Even documents 'sought for their own sake' may, when considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry." *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988). And because the concerns animating grand-jury secrecy require consideration of how disclosure today might affect "the functioning of future grand juries" tomorrow, matters that *previously were* occurring before a grand jury remain protected even after "the grand jury has ended its activities." *Douglas Oil*, 441 U.S. at 222; *see McKeever*, 920 F.3d at 849.

Before addressing the specifics of this case (in the redacted portion of this brief), it is worth noting more generally why full unsealing of an application for nondisclosure of a grand-jury subpoena under § 2705(b) would very often disclose a "matter occurring before a grand jury" (cf. Br. 24-26). Section 2705(b) requires the government to convince a court that there is a reason to believe that disclosure of the subpoena would result in "(1) endangering the life or physical safety of an individual; (2) flight

## PUBLIC COPY—SEALED

from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." Given those requirements, the § 2705(b) application will often discuss the nature of the crime under investigation and the government's suspicions about it. The application will also often reveal the identities of targets and suspects, and facts known about them, since their anticipated reaction typically justifies the nondisclosure order. It may divulge the identities of (and facts known about) potential witnesses, whose records may be sought under the application, or who may be subjected to intimidation or physical danger. Further, the application will often discuss why the government is seeking the subpoenaed information, reflecting the strategy of the current investigation and the direction that it is likely to take. In short, a § 2705(b) NDO application related to a grand-jury subpoena will normally reveal matters occurring before the grand jury and thus be protected by Rule 6(e) and Local Rule 6.1.

As to this case in particular, █████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

PUBLIC COPY—SEALED

**PUBLIC COPY—SEALED**

[REDACTED]

[REDACTED]

[REDACTED]

As the government explained in its ex parte sealed addendum, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Because further unsealing would disclose "a matter occurring before a grand jury," Rule 6(e) and Local Rule 6.1 demand continued secrecy.

None of Empower's counterarguments for sidestepping Rule 6(e) protection withstand scrutiny.

*First*, and primarily, Empower tries to perform the analysis backwards, arguing that NDO applications are "judicial records"— "because they are 'intended to influence' the court and the court 'ma[kes] decisions about them,'" *Leopold II*, 964 F.3d at 1128—and thus should be

24

publicly accessible (see Br. 13, 17-20). But even a "judicial record" is not subject to disclosure "when Congress has spoken directly to the issue at hand" and specifies otherwise. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017). This Court has already repeatedly recognized that Rule 6(e)(6) "expressly directs secrecy as the default position, and thus displaces the common-law right of access" as well as displacing "the interests balanced in the *Hubbard* test." *Leopold II*, 964 F.3d at 1130 (citing *Dow Jones*, 142 F.3d at 504); *see also Metlife*, 865 F.3d at 673 n.14. Local Rule 6.1 likewise directs that public disclosure of an "application filed in connection with a grand jury subpoena" requires "a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury," whether or not the application was intended to influence a court. Indeed, Rule 6(e)(6) requires sealing of even a court "order . . . relating to grand-jury proceedings," though court decisions are normally "the 'quintessential business of the public's institutions'" qualifying as "judicial records." *Leopold II*, 964 F.3d at 1128; *see, e.g.*, *Miller Subpoena*, 493 F.3d at 154 (Rule 6(e) protects concurring opinion). In the grand-jury context, Rule 6(e)'s secrecy rules control.

*Second*, Empower contends that *Leopold II* reads the Stored Communications Act to displace Rule 6(e) (Br. 13-14, 17-18, 20-23). That argument misunderstands *Leopold II*. As noted above (at 2-5), the government may obtain information covered by the Act through multiple alternative procedures, including a warrant, a court order under § 2703(d), a trial subpoena, or a grand-jury subpoena. *Leopold II* found a right of public access to two of those documents—judicial warrants and § 2703(d) orders—which the Act did not displace. *See* 964 F.3d at 1129-31. But those warrants and orders were not grand-jury documents, so they were never protected by Rule 6(e). *See In re New York Times Co.*, 657 F. Supp. 3d 136, 144 n.6 (D.D.C. 2023), *vacated by Cheney*, 2024 WL 1739096. Indeed, the government in *Leopold II* agreed that "the SCA 'does not require the sealing of warrants or § 2703(d) orders and applications in support thereof.'" 964 F.3d at 1129.

By contrast, a grand-jury subpoena for information covered by the Stored Communications Act is still a "subpoena[ ] relating to grand-jury proceedings" that under Rule 6(e)(6) "must be kept under seal." The attendant nondisclosure order and NDO application likewise must remain sealed. *Leopold II* drew that contrast, explaining that "[u]nlike

26

the Stored Communications Act, [Rule 6(e)(6)] expressly directs secrecy as the default position, and thus displaces the common-law right of access." 964 F.3d at 1130. Indeed, everyone in the *Leopold* litigation seemed to agree that nondisclosure orders issued pursuant to grand-jury subpoenas should remain secret under Rule 6(e). *See In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.* (*Leopold I*), 300 F. Supp. 3d 61, 85 n.23 (D.D.C. 2018). In particular, the district court warned that disclosure in cases captioned "§ 2705(b) order" would require individualized review of each NDO application "to ascertain whether the application actually pertained to non-disclosure of a § 2703(d) order" (and thus could be unsealed) or if it pertained to non-disclosure of a grand-jury subpoena, "which reveal[s] 'matter[s] occurring before the grand jury' and therefore [is] protected by Rule 6(e)'s secrecy protections" and could not be unsealed. *Id.* at 99. Thus, as *Leopold* makes clear, the Stored Communications Act does not alter the Rule 6(e) framework.

*Third*, Empower claims (Br. 11, 23, 26) that the grand-jury investigation was closed without charging anyone for disclosing classified information, citing the Office of the Inspector General report (see Part C below). Even assuming that Empower is correct, grand-jury secrecy

27

continues to apply even after the grand jury has "ended its activities." *Douglas Oil*, 441 U.S. at 222; *see, e.g.*, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-84 (1958); *McKeever*, 920 F.3d at 843 (applying Rule 6(e) secrecy to grand-jury records from 1957). Indeed, a lack of indictment for a known crime weighs in favor of continued secrecy, because "by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil*, 441 U.S. at 219. Grand-jury secrecy "is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424-25 (1983).

*Fourth*, Empower notes (Br. 23-24) that "[t]he mere fact that information has been presented to the grand jury does not itself permit withholding." *Labow v. DOJ*, 831 F.3d 523, 529 (D.C. Cir. 2016). No one argues for sealing on that ground here. Instead, the NDO application is directly protected by Rule 6(e)(6) ("[r]ecords . . . relating to grand-jury proceedings") and Local Rule 6.1 (an "application filed in connection with a grand jury subpoena"). *See Labow*, 831 F.3d at 529 (agreeing that if disclosure of documents would divulge that they had been subpoenaed,

that would "reveal the direction of the grand jury's investigation" and be covered by Rule 6(e).

*Fifth*, Empower emphasizes that Rule 6(e)(2) binds only the government to secrecy, not third parties like witnesses (Br. 3-4). *See Sells Eng'g*, 463 U.S. at 425. But that is immaterial here. Empower is asking *the government* to produce its own ex parte NDO application, which was never in the hands of a third-party witness. *See McKeever*, 920 F.3d at 848 (explaining that "Rule 6 assumes the records are in the custody of the Government"). Similarly irrelevant is the expiration of the nondisclosure order (cf. Br. 23). Even if the subpoena recipient is now free to disclose the grand-jury subpoena and the nondisclosure order, it cannot disclose the ex parte NDO application, which it never possessed. The contents of the NDO application remain known only to the government and the court. *See McKeever*, 920 F.3d at 848 (court is also "subject to the strictures of Rule 6")

*Sixth*, Empower contends that there is a strong public interest in disclosure (Br. 1-4, 9-11). Yet as this Court has recognized, even a "compelling public interest" in the materials (which Empower has not established here) "is irrelevant" absent a recognized exception to grand-

29

jury secrecy, because "Rule 6(e) governs what we may or may not release to the public." *Miller Subpoena*, 493 F.3d at 154; *see Dow Jones*, 142 F.3d at 503-04. A district court has no "authority to order disclosure of grand jury matter outside the enumerated exceptions." *McKeever*, 920 F.3d at 845. There is no exception to Rule 6(e) for disclosures that would "make good public policy." *Id.*

### C. The NDO Application Has Not Been Publicly Disclosed, So No Further Unsealing Is Warranted Here.

Because Rule 6(e) covers the disputed NDO application, the redacted portions of the application must remain under seal unless Empower can establish grounds for unsealing. The district court appropriately exercised its discretion in rejecting Empower's sole theory for unsealing: that those redacted portions have already been broadly and publicly disclosed (see A091).

"[W]hen once-secret grand jury material becomes sufficiently widely known, it may lose its character as Rule 6(e) material." *Miller Subpoena*, 493 F.3d at 154 (cleaned up). Mere "public disclosure," however, is insufficient on its own: "We do not intend to formulate a rule that once a leak of Rule 6(e) material has occurred, government attorneys

30

**PUBLIC COPY—SEALED**

are free to ignore the pre-existing bond of secrecy." *North*, 16 F.3d at 1245. Even "when the media reports information alleged to be grand jury material, the government is obligated to stand silent and not confirm the information, whether it is accurate or not." *Id.* (cleaned up); *see also Dow Jones*, 142 F.3d at 505 ("press reports relying on unnamed sources" do not eliminate Rule 6(e) secrecy). Until "the cat is out of the bag," Rule 6(e) requires continued secrecy. *North*, 16 F.3d at 1245; *see, e.g.*, *Miller Subpoena*, 493 F.3d at 155 ("one can safely assume that the 'cat is out of the bag' when a grand jury witness . . . discusses his role on the CBS Evening News").

Empower primarily argues that the existence of the investigation was already public at the time of its unsealing motion, given that the nondisclosure order had expired and Empower possessed the order and the grand-jury subpoena (see Br. 36-39). But *Empower's* knowledge of the subpoena and nondisclosure order does not render them "widely known" to the general public. After all, the recipient of a grand-jury subpoena always knows its contents, yet that knowledge does not erase Rule 6(e) secrecy. ███████████████████████████████

████████████████████████████████████████

**PUBLIC COPY—SEALED**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

More fundamentally, public awareness that an *investigation* exists is irrelevant. *See, e.g.*, *In re Sealed Case*, 77 F.4th 815, 831 (D.C. Cir. 2023) (finding that "disclosure would have harmed the integrity and secrecy of the ongoing grand jury investigation, despite public knowledge of the broader investigation"); *In re Grand Jury Subpoena*, 223 F.3d 213, 219 (3d Cir. 2000) (rejecting argument that disclosure was required because "the nature of the investigation ha[d] already been made public in several contexts"). Instead, Rule 6(e) material loses its protection only when *that specific material* is widely known. *See, e.g.*, *Miller Subpoena*, 493 F.3d at 154. Requests for Rule 6(e) unsealing usually involve situations where a member of the public knows about the investigation generally but wants further details. Here, Empower points to no indications that the public knew the sort of information that one would

expect to find in an NDO application: details and suspicions about the crime under investigation, potential suspects or witnesses, the specific concerns animating a nondisclosure order, or the strategy and direction of the grand jury's investigation at the time of the subpoena. Empower thus shows no justification for second-guessing Judge Boasberg's conclusion that the redacted Rule 6(e) material was not widely known.

Empower next points to a report by the Office of the Inspector General (OIG) that was released while the appeal was pending, arguing that the OIG report constitutes a public disclosure that erases Rule 6(e) secrecy (see Br. 39-40).[4] As an initial matter, the government maintains that "on appeal we are limited to the record in the district court," *United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013), so factual developments during the pendency of the appeal are not proper grounds for reversal. *See, e.g.*, *Dow Jones*, 142 F.3d at 505 (noting that "*[b]y the time of the Chief Judge's order* it was no longer a secret that the grand jury had

---

[4] *See* Office of the Inspector General, DOJ, OIG Rep. No. 25-010, *A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media* (Dec. 2024), *available at* https://oig.justice.gov/sites/default/files/reports/25-010.pdf ("OIG Rep.").

subpoenaed Carter") (emphasis added). We recognize, however, that this Court recently rejected that argument in an unpublished decision, reasoning that although "the district court's decision was correct when it issued," an "intervening public disclosure . . . materially alter[ed] the legal landscape" and justified a remand to reconsider unsealing in light of the new disclosure. *Cheney*, 2024 WL 1739096, at *4-5 (citing *In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989)).

Still, even considering the OIG report, Empower fails to establish the need for a remand to consider further unsealing. The report stated that, after a series of news "articles containing classified information," the Department used "compulsory process to obtain records of Members of Congress, congressional staffers, and members of the news media in four criminal investigations into the unauthorized disclosure of classified information that were opened in 2017. The Department did not charge anyone in these investigations with unauthorized disclosure of classified information, and all four of the investigations are now closed." OIG Rep. at 1, 3. While raising concerns about some aspects of the investigations, the report acknowledged that, "[d]uring the relevant timeframe of this review, the Department did not have a policy that expressly or clearly

34

addressed the use of compulsory process to obtain from third parties the communications records of Members of Congress or congressional staffers, or the use of NDOs in connection with such compulsory process." *Id.* at 3. Further, the Department noted, "the OIG found no indication in its review that the investigative steps of the career prosecutors in any of these cases were pursued for improper reasons or based on party affiliation or status." *Id.* at 82. Based on the OIG report, the Department revised its policies for future investigations involving congressional staffers. *See id.* at 84-85.

At the outset, Empower has not shown that the NDO application at issue in this appeal was connected to the investigations discussed in the OIG report. The report discussed multiple investigations, but it never identified the specific grand-jury subpoenas or NDO applications that its discussion related to. Without that link to the NDO application here, the OIG report cannot constitute a "widely known" public disclosure that lifts grand-jury secrecy.

In any event, the OIG report did not disclose Rule 6(e) material. To the contrary, "[t]he public version of th[e] report contains limited redactions of information that the Department determined contains

grand jury information." OIG Rep. at 19. Empower points to no disclosures in the OIG report that clearly reveal otherwise protected Rule 6(e) information. Indeed, Empower seeks unsealing of the application "to learn precisely what DOJ stated to the court" when seeking the nondisclosure order (Br. at 4), information that Empower does not know and is not public. The cat is not "out of the bag" when the whole point of the unsealing is to discover the bag's contents. Importantly, the OIG report did not publicly identify suspects or targets of the investigation, but further disclosures about the investigation might be used to help identify suspects or targets. Given that grand-jury secrecy exists in significant part to avoid identifying people who are investigated by the grand jury but never charged with a crime, *see Douglas Oil*, 441 U.S. at 219, Empower fails to show that the OIG report justifies further unsealing of the NDO application. *See Miller Subpoena*, 438 F.3d at 1141 (rejecting disclosure that could "damage the reputations of individuals who may never be charged with crimes"); *see also In re Cisneros*, 426 F.3d 409, 413 (D.C. Cir. 2005).

36

### D.    If This Court Disagrees that Rule 6(e) Applies, It Should Remand.

Finally, if this Court concludes that Rule 6(e) does not provide the governing framework, it should remand for the district court to consider Empower's arguments for unsealing based on a right of access under the common law (see Br. 26-36) or the First Amendment (see Br. 40-48). Below, neither the government nor the district court weighed in on those issues. They should not be resolved for the first time on appeal. *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) ("As an appellate court, we are a court of review, not of first view.") (cleaned up). Assessing the common-law right of access would require a six-factor balancing under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), which this Court reviews for abuse of discretion. *See In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022). And ruling on the First Amendment right of access would require resolving a constitutional issue that can be avoided if the common-law right of access applies. *See Leopold II*, 964 F.3d at 1126-27 (declining to reach arguments about First Amendment right of access on avoidance grounds, when applicants "believe they can receive all of the relief they request under the common law"). Notably, even outside of the grand-jury context,

37

the Fourth Circuit has upheld the continued sealing of Stored Communication Act records. *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290-94. But such questions are best left to the district court in the first instance.

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
DANIEL J. LENERZ
GREGG A. MAISEL
Assistant United States Attorneys

        /s/
_____
ERIC HANSFORD
D.C. Bar #1017785
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Eric.Hansford@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 7,466 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

_____/s/_____
ERIC HANSFORD
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the redacted version of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Brian J. Field, Esq., on this 20th day of June, 2025. The Ex Parte Brief for Appellee is not being served upon counsel for appellant.

_____/s/_____
ERIC HANSFORD
Assistant United States Attorney