# 𝕌nited 𝕊tates 𝕮ourt of 𝔸ppeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2025          Decided February 3, 2026

No. 24-5239

IN RE: APPLICATION OF THE UNITED STATES FOR AN ORDER
PURSUANT TO 18 U.S.C. 2705(B),

EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-mc-00058)

———

*Brian J. Field* argued the cause for appellant. With him on
the briefs was *Joshua J. Prince*.

*Eric Hansford*, Assistant U.S. Attorney, argued the cause
for appellee. With him on the brief were *Jeanine Ferris Pirro*,
U.S. Attorney, and *Chrisellen R. Kolb*, *Daniel J. Lenerz*, and
*Gregg A. Maisel*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, CHILDS, *Circuit Judge*,
and ROGERS, *Senior Circuit Judge*.

2

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: This is an appeal from an order partially denying the unsealing of Applications for Non-Disclosure Orders filed by the Department of Justice pursuant to the Stored Communications Act, 18 U.S.C. § 2705(b). At issue is whether the district court abused its discretion by failing to further unseal the Applications because they were judicial records subject to a right of access under the common law or the First Amendment to the Constitution, or, alternatively, ancillary grand jury records no longer subject to sealing under Federal Rule of Criminal Procedure 6(e)(6) due to public disclosures. The court affirms, subject to a limited remand for the district court to consider whether to allow amendment to the motion to unseal in view of a December 2024 report by the Department's Office of Inspector General.

## I.

Empower Oversight Whistleblowers & Research ("Empower") "is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing" that was founded by Jason Foster. Appellant Br. at ii. On May 2, 2024, Empower filed a motion to intervene in a closed grand jury proceeding and for unsealing of applications filed by the Justice Department requesting non-disclosure orders related to subpoena number GJ2017091241939. *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b)* (May 2, 2024); FED. R. CRIM. P. 24(b). The government opposed the motion.

Attached to Empower's motion were redacted copies of the subpoena and the initial non-disclosure order issued by a Magistrate Judge and the extensions of the order. The

3

memorandum in support of the motion stated that in October 2023, Google, Inc. had notified Foster that in 2017 a grand jury subpoena to testify had been issued for his Google email address and Google Voice telephone numbers from December 2016 to May 2017. At that time, Foster was Chief Investigative Counsel of the Senate Committee on the Judiciary, and his responsibilities included directing congressional investigations into allegations of waste, fraud, abuse, and misconduct at the Department. Google, Inc. informed Foster that a non-disclosure order under the Act, 18 U.S.C. § 2705(b), prohibited notifying him of the subpoena, and that the non-disclosure order had been extended for one-year periods in 2018, 2019, 2020, and 2021, and expired in 2023. Interv'r. Mem. at 4-5 (May 2, 2024).

Empower argued that unsealing was required because the Applications were judicial records subject to a presumptive right of access under the common law, and the Department could show neither that denial was warranted when the investigation was "long closed," nor that disclosure would impede an ongoing investigation or reveal information impinging on personal privacy. *Id.* at 7-8, 12-13 (citations omitted). Empower further argued that the public's qualified right under the First Amendment of access to judicial records supported access under a strict scrutiny standard. *Id.* at 19, 22-23 (citation omitted). In any event, Empower urged the district court to exercise discretionary authority to unseal the documents. *Id.* at 23. Alternatively, if Federal Rule of Criminal Procedure 6(e) on grand jury secrecy applied to the Applications, Empower claimed that disclosures by Google, Inc., the media, and the Department had waived secrecy. Interv'r. Reply Mem. at 17-18 (July 15, 2024).

The Department opposed unsealing. Assuming the validity of the subpoena, the Department argued that the

4

Applications were ancillary grand jury material protected under Rule 6(e)(6), and no right of access applied; that the public disclosures were insufficient to waive grand jury secrecy; and that the documents could not be redacted "in any meaningful way." Opp'n at 8 (June 9, 2024). By sealed *ex parte* addendum, the Department provided the Applications to the court for *in camera* review.

The district court allowed Empower to permissively intervene, stating that Empower sought to identify the basis offered by the Department in support of the Applications because of "[c]oncern[] with Justice's possible misuse of its subpoena power to identify confidential whistleblowers providing information to Congress about governmental misconduct." MEM. OP. at 1 (Aug. 23, 2024). That decision is not challenged on appeal.

The district granted unsealing only in part, ruling the Applications were ancillary grand jury records subject to Rule 6(e)(6). *Id.* at 5, 7. The court concluded that there was no right of access to the Applications under the common law or the First Amendment, and therefore most of the documents could not be unsealed. *Id.* at 4-5. The exception was "a typical jurisdictional discussion and a setting out of the legal standards that govern" non-disclosure orders in the Applications, which the court ordered unsealed. *Id*. at 5. Finding "the grand-jury proceeding at issue here has not been broadly or publicly disclosed by the Government or the witnesses who appeared," the court concluded that there had been no waiver of grand jury secrecy by disclosure. *Id.* at 7. Empower appeals.

## II.

On appeal, Empower renews the arguments it made in the district court, while proffering additional evidence of waiver of

5

grand jury secrecy by disclosure, *viz.*, a December 2024 report by the Department's Office of Inspector General.

This court reviews the decision of the district court to seal or unseal for abuse of discretion. *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords*., 964 F.3d 1121, 1131 (D.C. Cir. 2020). That standard of review leaves considered discretion to the district court. *See Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kansas v. Babbitt,* 43 F.3d 1491, 1497 (D.C. Cir. 1995) (citing *Langnes v. Green*, 282 U.S. 531, 541 (1930); then citing Maurice Rosenberg, *Judicial Discretion of the Trial Court: Viewed from Above,* 22 SYRACUSE. L. REV. 635 (1971)). An abuse of discretion occurs when a district court "did not apply the correct legal standard or if it misapprehended the underlying substantive law." *Id.* (citation and ellipsis omitted). Whether the district court applied the proper legal standard in exercising discretion "is a question of law reviewed de novo." *Leopold*, 964 F.3d at 1131 (citation omitted).

## A.

The Stored Communications Act ("the Act"), 18 U.S.C. § 2701 *et seq*., was enacted as part of the Electronic Communications Privacy Act of 1986. Responding to the development of new telecommunications and computer technology, "including electronic mail, voice mail, electronic bulletin boards, computer storage, cellular telephones, video teleconferencing, and computer-to-computer links," the Act was designed to address "legitimate law enforcement needs while minimizing intrusions on the privacy of system users as well as the business needs of electronic communications system providers." 132 CONG. REC. 27633 (1986) (statement of Sen. Leahy, co-sponsor with Sen. Mathias, chairman).

6

The Act makes it a felony to intentionally access "without authorization a facility through which an electronic communication service is provided" or intentionally exceed "an authorization to access that facility," and thereby obtain, alter, or prevent "authorized access to a wire or electronic communication while it is in electronic storage."  18 U.S.C. § 2701(a).  Electronic service providers are prohibited from voluntarily divulging the contents of communications exchanged or stored on their platforms, and user records.  *Id.* § 2702 (a)(1)–(3).  Most relevant, the Act establishes procedural requirements for law enforcement to obtain information from electronic service providers about their subscribers or customers, again distinguishing between the content of communications and non-content data (such as a user's name or address).  *Id.* § 2703(a)–(d).  Sections 2704, 2706, and 2708-13, covering a miscellany of subjects such as backup preservation, cost reimbursement, exclusivity of remedies, and civil actions against the United States, are not at issue.

Section 2703, *Required Disclosure*, provides, as relevant, that a "governmental entity" may seek, by subpoena or court order, limited types of non-content information from an electronic service provider about a subscriber or customer without notice: "(A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (F) means and source of payment for such service (including any credit card or bank account number)."  *Id.* § 2703(c)(2).  This was the information sought by the grand jury subpoena that Google, Inc. received in September 2017.  Interv'r. Mem. at 2 & Ex. B.

7

Section 2705, *Delayed Notice*, provides, as relevant, that "a governmental entity" may apply for a court order to require a service provider "not to notify any other person of the existence" of the subpoena. 18 U.S.C. § 2705(b). To obtain a non-disclosure order, the government must show "that there is reason to believe that notification" would result in at least one of five harms: "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.* The non-disclosure order lasts "for such period as the court deems appropriate." *Id.* This was the type of order that Google, Inc. received in 2017, and that was extended multiple times, thereby prohibiting Google, Inc. from informing Foster about the subpoena until 2023. Interv'r Mem. at 4 & Ex. A.

**B.**

Rule 6 (e)(6), *Recording and Disclosing the Proceedings*: *Sealed Records*, of the Federal Rules of Criminal Procedure provides: "Records, orders, and subpoenas relating to grand jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." FED. R. CRIM. P. 6 (e) (6). This provision governs ancillary grand jury records concerning, for instance, material "relating to" motions to quash a subpoena for a witness's testimony or to invoke a privilege. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 498 (D.C. Cir. 1998). Materials related to grand jury proceedings are covered by Rule 6(e)(6) when they would "tend to reveal some secret aspect of the grand jury's investigation," such as information about grand jury witnesses, testimony, or investigative strategy. *Senate of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) (citation

8

omitted). Noting the Advisory Committee opinion that the rules "did 'not violate any constitutional right of the public or media to attend' such ancillary proceedings because no such constitutional right exists," this court considered the Supreme Court and Congress to have agreed when they approved the rules. *Dow Jones*, 142 F.3d at 500 (quoting FED. R. CRIM. P. 6(e)(5) advisory committee note).

The Applications at issue are "records . . . relating to grand-jury proceedings" because they concern the protocols for disclosing a grand-jury subpoena. An application for a non-disclosure order regarding a grand jury subpoena is similar, in relevant respects, to a hearing on a motion to compel a grand jury witness's testimony that "will nearly always" include detail that poses "a danger of revealing grand jury matters." *Id.* at 501. Because these Applications are ancillary to a grand jury proceeding subject to Rule 6(e), Empower's claims to access under the common law and the First Amendment fail. *Id.* at 500, 504. The district court therefore correctly found the Applications for which Empower seeks unsealing were ancillary to a grand jury proceeding and applied the standard of Rule 6(e)(6) in restricting unsealing. MEM. OP. at 3-4.

On appeal, Empower principally relies on *In re Leopold*, 964 F.3d 1121, in maintaining that the district court applied the wrong standard under Rule 6(e) in ruling the Applications are judicial records not subject to the common law right of access. Appellant Br. at 17-22. *Leopold* involved three types of disclosure orders, 964 F.3d at 1123-24, one of which is relevant here: court orders to compel disclosure of specific records upon a showing of "reasonable grounds" to believe the records are "relevant and material to an ongoing investigation" under 18 U.S.C. § 2703(d). This court reexamined the origins and logic of the common law right of access, observing that the right "antedates the Constitution" and "reflects the antipathy of a

9

democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *Id.* at 1127 (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 674 (D.C. Cir. 2017)). The court held that the applications for court orders and their supporting documents were judicial records because they "are 'intended to influence' the court and the court 'ma[kes] decisions about them,'" *id.* at 1128 (quoting *MetLife*, 865 F.3d at 663) (alteration in original), and that the common-law right of access applied to the applications, because the Stored Communication Act, which does not mention sealing, did not displace the right of access by requiring the Applications or related documents to be sealed. *Id.* at 1129.

Unlike in *Leopold*, Empower is seeking the unsealing of Applications for Non-Disclosure Orders relating to a grand jury subpoena. True, as Empower emphasizes, *Leopold* reaffirmed that the common law right of access is based on the "'strong presumption in favor of public access to judicial proceedings,' including judicial records." *Id.* at 1127 (quoting *MetLife*, 865 F.3d at 663). Further, in *Leopold* the court recognized, as Empower urges here, that *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), provides the standard for ruling on the motion to unseal applications. *Id.* But, in *Leopold* the court was clear that standard must yield where Congress has spoken directly to the issue. *Id.* at 1129. Although the Applications that Empower seeks to have unsealed may be judicial records, they are not subject to a common law right of access because Rule 6(e)(6) applies and displaces any such right. *See id.* at 1130 (citing *Dow Jones,* 142 F.3d at 504).

Empower's claim to a right of access to the Applications under the First Amendment, Appellant Br. at 40-48, fares no better. Empower relies principally on *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). There, the Supreme Court

10

described the First Amendment right of access as providing the public with a qualified right to observe certain judicial proceedings where the proceedings have "a tradition of accessibility" and "public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8-9 (citation omitted).  These characteristics are absent here as the materials Empower seeks were attendant to a grand jury subpoena.  Although this court has acknowledged that "public access plays an important role in other aspects of the judicial process," it has held that "there is no First Amendment right of access to grand jury proceedings, nor do First Amendment protections extend to ancillary materials dealing with grand jury matters." *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (2007) (citation and internal quotation marks omitted).  As the court explained in *Dow Jones*, "the purported First Amendment right" claimed by the press in ancillary grand jury proceedings is limited to access to "motions, applications, and orders" as prescribed under D.D.C. Local Rule 302 (now Local Criminal Rule 6.1) and such "papers, orders, and transcripts" before the grand jury where the court finds "continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." 142 F.3d at 500 & n.6.  Empower has not shown this precedent does not apply here.

Similarly unavailing, Empower claims that the Applications may now be unprotected by grand jury secrecy because the investigation of the Department is closed. Appellant Br. at 26.  The Supreme Court has instructed that grand jury secrecy serves to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979).  A closed grand jury investigation that investigated but did not charge individuals criminally may still be subject to grand jury secrecy to protect their reputations

11

from unwarranted aspersions, and to ensure that future grand jury witnesses are not dissuaded from testifying fully and frankly. *Id.* & n. 10.  Like reasoning would apply when a non-disclosure order has expired.  *See* Appellant Br. at 37.  Even if Google, Inc., as a grand jury witness, may not be subject to the secrecy obligation imposed on individuals by Rule 6(e)(2), *In re Subpoena 2018R00776*, 947 F.3d 148, 152 (3d Cir. 2020), the Department is bound by the secrecy obligations imposed by Rule 6(e) and the court is required by Rule 6(e)(6) to maintain such Applications "under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."

Empower points to several public interests that may be implicated by the Applications, whether sealed or not. Appellant Br. at 27-30.  It posits that the Department sought the personal communications records of two Members of Congress and 43 congressional staff members.  *Id.* at 7. Further, it posits, the subpoena compelled Google, Inc. to provide information that "would easily enable [the Department] to identify confidential whistleblowers who were providing Congress with information about government misconduct," thereby raising "serious concerns" about intrusion into the separation of powers.  *Id.* at 9.  In *Miller*, this court held that even "a compelling public interest" of the press in obtaining records about a significant criminal investigation did not warrant disclosure when Rule 6(e) protected "still-secret grand jury matters."  493 F.3d at 154.  Empower fails to offer a persuasive reason why this precedent would not apply here.

12

## C.

Empower's challenges to the ruling on the merits of unsealing also fail to demonstrate an abuse of discretion by the district court.

The redacted material in the Applications was protected by Rule 6(e)(6) as information that would reveal "matter[s] occurring before a grand jury." MEM. OP. at 4-5 (quoting FED. R. CRIM. P. 6 (e) (6)). Such matters include "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Dow Jones*, 142 F.3d at 500 (citation and internal quotation marks omitted). The Department's *ex parte* addendum supports the district court's conclusion that only limited unsealing was permissible and appropriate. MEM. OP. at 5; ORDER at 1 (Aug. 23, 2024); Sealed Suppl. App. 2, 17-28 (June 23, 2025); *see In re Sealed Case*, 77 F.4th 815, 831 (D.C. Cir. 2023). Empower maintains that it "has consistently stated that 'it has no objection to the redaction of specific names'" in the Applications, Reply Br. at 25, pointing only to the redacted subpoena in Exhibit B, not to an argument presented in the district court. Appellant Br. at 32 (citing Interv'r. Mem. at 1 n.1). Even assuming that argument is not forfeit, *see Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 417 (D.C. Cir. 2024) (citing *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (2019)), it is insufficient to show an abuse of discretion by the district court in view of Supreme Court instruction to maintain such documents under seal when they implicate the considerations underlying grand jury secrecy. *See Douglas Oil*, 441 U.S. at 218-19.

Lastly, Empower contends that the district court erred in rejecting waiver based on prior disclosures. Appellant Br. at 36-40. "Information widely known is not secret," and grand

13

jury secrecy is lost when a disclosure is sufficiently significant so that "the cat is out of the bag." *In re North,* 16 F.3d 1234, 1245 (D.C. Cir. 1994) (quoting *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir.1990)). In *North*, grand jury secrecy had been waived when Rule 6(e) material was released to individuals with access to an unredacted version of an independent counsel's report and "ultimately became part of the media accounts." *Id.* at 1244. Similarly, in *Miller*, grand jury secrecy had been waived when a grand jury witness made a "broadly publicized admission" on national television of being the source of the leak under investigation and cooperating with the investigation from the beginning. 493 F.3d at 153, 155.

The district court reasonably concluded, in view of circuit precedent, that the "publicity concerning the grand-jury materials here is dramatically less than that in other cases where the Court has held that any expectation of secrecy no longer existed," and the disclosures were not enough to conclude that "the cat is out of the bag." MEM. OP. at 7. In the district court, Empower identified disclosures in (1) media outlet reports that other congressional staff members had received notices that their communication records had been subpoenaed; (2) Google, Inc.'s sharing of the subpoena with Foster, Empower's founder; (3) the Department's acknowledgment that it was investigating the unauthorized disclosure of classified national security information in press releases following indictment and sentencing of a former congressional staff member; and (4) the OIG statement that it was reviewing the Department's use of subpoenas for communications records of Members of Congress and affiliated individuals in connection with alleged unauthorized disclosures of information to the media. Interv'r. Mem. at 3-4; Interv'r. Reply Mem. at 17-18.

14

Grand jury secrecy was not lost when "the media reports information alleged to be grand jury material." *North*, 16 F.3d at 1245. That Google, Inc. in 2023, after the last extension had expired, shared with Foster the redacted subpoena for his Google accounts and the non-disclosure orders, Interv'r. Mem. at 2, 4 & Exs. A-B, does not establish that Google, Inc. obtained or "widely" disclosed the redacted content in the Applications. Similarly, the Department's press releases of June 7, 2018, "Former U.S. Senate Employee Indicted on False Statements Charges," and December 20, 2018, "Former U.S. Senate Employee Sentenced to Prison Term on False Statements Charge," referred to public proceedings and events, not details about further investigation or action by the grand jury that had returned the indictment. *See* Press Releases, U.S. Att'y's Off., D.C. (June 7, 2018, and Dec. 20, 2018).

Nor did OIG's acknowledgement of a pending review of the Department's "use of subpoenas and other legal authorities to obtain communication records of Members of Congress and affiliated persons" identify a particular subpoena or provide detail about a grand jury investigation. OIG, *Ongoing Work*, https://perma.cc/J6TJ-VW3M; Reply Mem. at 17. Contrary to the implication of Empower's argument, Appellant Br. at 23, 36, the district court did not treat Rule 6(e)(6) as drawing "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury," *Senate of Puerto Rico*, 823 F.2d at 582 (citation omitted). Rather, the district court's assessment of the nature and effect of the identified public disclosures rested on this circuit's precedent, implicitly rejecting Empower's view that "the publicity in other cases differed from the publicity here only in degree, not kind," Appellant Br. at 36.

On appeal, Empower maintains that virtually *any* grand jury secrecy was waived in December 2024 when OIG issued

15

"A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media." Appellant Br. at 39-40; Reply Br. at 25. Claiming this Report "acknowledged details about the leak investigation and [the Department]'s seeking subpoenas for records about [M]embers of Congress and their staff[]," Appellant Br. at 39, Empower asks the court to consider the Report and reverse the district court's decision on unsealing. Appellant Reply Br. at 21 (citing *In re Cheney*, 2024 WL 1739096, *4-*5 (D.C. Cir. Apr. 23, 2024) (unpubl.)). *But see In re Grant*, 635 F.2d 1227, 1232 (D.C. Cir. 2011). The OIG Report became public after the district court entered the August 23, 2024, Order that Empower appeals.

Under the Federal Rules of Appellate Procedure, the record on appeal consists of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." FED. R. APP. P. 10(a). An appellant must prepare and file an appendix containing the relevant portions of the record. FED. R. APP. P. 30(a). Although there are "rarely used exceptions," *Oviedo v. Washington Metro. Area Transit Auth*., 948 F.3d 386, 392 n.3 (D.C. Cir. 2020), "an appellate court ordinarily has no factfinding function. It cannot receive new evidence from the parties, determine where the truth actually lies, and base its decision on that determination." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 711 F.2d 1071, 1075 (D.C. Cir. 1983) (quoting *Goland v. CIA*, 607 F.2d 339, 371 (D.C. Cir. 1979)). Where, as here, the decision whether to unseal grand jury material is record-intensive and Empower does not invoke a "rarely used exception," the court declines to address the OIG Report in the first instance. *See Oviedo*, 948 at 392 n.3.

16

Accordingly, the court affirms the district court Order of August 23, 2024, subject to a limited remand of the case for the district court to consider whether to allow Empower to amend the motion for unsealing and supplement the district court record with the OIG Report of December 2024.